IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOVAN WATKINS,     *
        Plaintiff,
        *
    v.        CIVIL ACTION NO. DKC-09-294
        *
MARYLAND DIVISION OF CORRECTIONS,
  et al.,     *
        Defendants.
        ******

## MEMORANDUM OPINION

On February 9, 2009, the court received Plaintiff Jovan Walker's civil rights complaint seeking compensatory damages filed pursuant to 42 U.S.C. § 1983. Walker alleges that he was housed in an unsanitary prison cell which caused him to develop medical problems. He further alleges he was denied adequate medical care. Paper No. 1.

Defendants[1] filed Motions to Dismiss, or in the Alternative for Summary Judgment. Paper Nos. 19 and 29. Plaintiff has filed a Motion for Summary Judgment as well as responses to Defendants' dispositive motions. Paper Nos. 22, 31, and 33. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2009). For the reasons stated below, the dispositive motions filed by Defendants, treated as motions for summary judgment, will be granted and Plaintiff's Motion for Summary Judgment denied.

**Background**

Watkins alleges that in June of 2007 he developed a cough and breathing problems. He noticed that "a visible furry black and green fungus-mold substance" was growing in and out of the

---

[1] Joseph Johnston has moved to withdraw as attorney for Defendant Aster Berhane. Paper No. 40. The motion shall be granted.

1

ventilation system in his cell.  Plaintiff states that he learned that the cell directly above his cell, which shared his ventilation system, had been condemned due to mold.  He also states that in September, 2007, a lesion grew from his left nostril.  The lesion was surgically removed in June of 2008. Plaintiff alleges that his respiratory problems and the lesion were caused by the mold growing in his cell. Paper No. 1.  Plaintiff further alleges that he consulted with Physician's Assistant Bruce Ford who referred Plaintiff to Dr. Aster Berhane, who conducted a breathing exam and prescribed a rescue inhaler.  Plaintiff states that he advised Berhane of his "hazardous living conditions" but that Dr. Berhane changed Plaintiff's chief complaint in order to protect Eastern Correctional Institution. *Id*.

The uncontroverted medical records indicate that Plaintiff has a history of hypertension.  In July, 2007, Plaintiff submitted a sick call slip complaining of coughing and respiratory problems.  During his evaluation on July 6, 2007, by Physician's Assistant Bruce Ford,  Plaintiff advised Ford that his problems were caused by mold in the air ducts.  Plaintiff was observed to be in no acute distress.  No wheezes or other lung sounds indicating a respiratory problem were noted.  Ford prescribed a decongestant.  Paper No. 19, Ex. A and B.  Dr. Berhane evaluated Plaintiff in the Cardiovascular Chronic Care Clinic on July 10, 2007.  Plaintiff advised the doctor that there was a lot of humidity in his cell which made him cough, particularly at night.  Plaintiff also complained of shortness of breath when running and described a history of smoking.  Dr. Berhane prescribed a bronchodilator to relax muscles in the airways and increase air to the lungs as well as a synthetic corticosteroid nasal spray for treating allergic rhinitis. *Id*.

Plaintiff was again evaluated by P.A. Ford on July 27, 2007, due to his complaint of a persistent cough.  Ford noted that Plaintiff had been taking Capoten for his hypertension; a side

effect of Capoten is coughing. Ford advised Plaintiff to stop taking the Capoten for ten days to evaluate what effect it had on his cough. *Id*. Ex. B.

On August 3, 2007, a chest x-ray was negative for disease. Plaintiff was again evaluated by Ford on August 7, 2007. Plaintiff indicated that his coughing had not improved as a result of stopping Capoten, and was advised by Ford to resume taking Capoten.

Plaintiff was again evaluated by Ford on August 23, 2007. He again advised Ford that he believed his symptoms were caused by mold. Ford noted that stopping Capoten did not improve Plaintiff's cough. Ford discontinued the Capoten and prescribed Atenolol, a different anti-hypertensive medication that does not cause coughing as a side effect. Ford also noted that Plaintiff's chest x-ray was negative for disease. One week later Ford again evaluated Plaintiff. He noted that Plaintiff's blood pressure was higher since he began taking Atenolol and accordingly, Ford increased Plaintiff's dosage of diuretic.

On September 7, 2007, Ford again evaluated Plaintiff, noting that Plaintiff reported his daytime coughing had decreased but Plaintiff's cell buddy advised Plaintiff he was coughing at night. Plaintiff asked to be put back on Capoten. As Plaintiff's blood pressure was slightly elevated, Ford restarted Capoten. *Id.*

Plaintiff's next sick call slip was not submitted until January 10, 2008. At that time Plaintiff complained of a dry frequent cough and a growth on his left nostril. Plaintiff's blood pressure was elevated. Dr. Sayed Jalali evaluated Plaintiff at the Cardiovascular Chronic Care Clinic. Plaintiff told R. Jalali he stopped taking the Atenolol because "it made him feel funny." Dr. Jalali noted Plaintiff was not compliant with his diet. Dr. Jalali discontinued the Atenolol and prescribed an Albuterol inhaler. *Id*.

Plaintiff was seen by P.A. Ford on February 26, 2008. Ford noted Plaintiff had a small nodule or cyst on his outside nose. Plaintiff continued to complain of coughing and Ford again noted that Plaintiff's x-ray was negative for disease.

Dr. Berhane evaluated Plaintiff on April 10, 2008, ordering blood tests and another chest x-ray due to Plaintiff's continued complaints of respiratory problems and fatigue. The following day Dr. Berhane renewed Plaintiff's prescription for the synthetic corticosteroid. The x-ray, taken on April 25, 2008, was negative for lung or cardiac disease. *Id*. Ex. A and B. Dr. Berhane again evaluated Plaintiff on May 1, 2008, and determined that Plaintiff's lungs were clear of congestion and his chest x-ray negative. He ordered that Capoten be stopped for one month to determine if that would help the cough. Dr. Berhane also noted Plaintiff had received Qvar, an inhaled steroid medication used to prevent asthma attacks, that day. Dr. Berhane directed Plaintiff's blood test be repeated and told Plaintiff to follow up in one month. Dr. Berhane also observed that Plaintiff had a papilloma, a benign overgrowth of tissue, on the inside of his left nostril. As Plaintiff was already receiving decongestants, Dr. Berhane did not believe surgical removal of the growth was indicated at the time. *Id*.

Plaintiff submitted another sick call slip on May 19, 2008, indicating he still had breathing problems and requesting to see a respiratory therapist. Dr. Berhane noted Plaintiff's blood tests could indicate sarcoidosis, a disease of unknown origin that leads to inflammation of various body organs, usually beginning in the lungs or lymph nodes in the chest. Dr. Berhane ordered a pulmonary consult. She also observed that the papilloma in Plaintiff's nostril appeared smaller and Plaintiff did not complain of the papilloma at that time. *Id*.

Plaintiff was evaluated by Dr. Berhane on July 2, 2008.  He advised Dr. Berhane that his cough had resolved with the discontinuation of the Capoten but he continued to be short of breath. Plaintiff underwent pulmonary function tests on July 3, 2008, which suggested an interstitial process such as sarcoidosis.  *Id*.

On July 7, 2008, Plaintiff was evaluated by pulmonologist Gregory Thompson, M.D.  Dr. Thompson found Plaintiff's signs and symptoms suggested sarcoidosis and he recommended a high resolution CT scan of Plaintiff's chest and repeat blood tests.  Dr. Thompson also recommended continuing Plaintiff's medication and adding Singulair, a medication used to prevent asthma attacks. Dr. Berhane ordered the CT scan on July 21, 2008.  *Id*.

On July 30, 2008, Dr. Berhane evaluated Plaintiff, who advised he felt much better and was not coughing as much.  He indicated he now needed to use the Albuterol inhaler once a week as opposed to several times a day.

On August 13, 2008, the CT scan showed patchy areas of a hazy appearance in the left mid and lower lung and right mid and upper lung.  Dr. Berhane referred Plaintiff back to Dr. Thompson for further evaluation.  *Id*.

Dr. Berhane evaluated Plaintiff again on September 3, 2008, and noted that there was no increase in Plaintiff's use of his inhaler and Plaintiff reported the inhaler improved his symptoms. Dr. Berhane renewed Plaintiff's medication.  *Id.*

Plaintiff submitted a sick call slip on October 3, 2008, indicating he was depressed and stressed due to his health issues, conflict with his medical providers, and not getting clear answers. Plaintiff had previously been told he had asthma and would have a follow-up consultation with the pulmonologist.  *Id*.

Plaintiff was again seen by Dr. Berhane on October 15, 2008. It was noted that Plaintiff's pulmonary consultation was still pending. Plaintiff reported he was still short of breath and brought literature on clinical symptoms that could be caused by fungal exposure. Plaintiff advised Dr. Berhane that that the ventilation system in his housing unit had been changed. Dr. Berhane did not hear Plaintiff cough during examination. She noted his asthma was stable and he was using his medication as prescribed. Dr. Berhane ordered Plaintiff's blood tests be repeated and that Plaintiff be seen for a follow up by the pulmonologist. Plaintiff did not complain regarding the papilloma on his nose. *Id*.

Plaintiff was seen on October 16, 2008, by Dr. Thompson. The examination revealed Plaintiff's air flow in his lungs was excellent and no wheezing was observed. Dr. Thompson noted that Plaintiff's blood tests and CT scan did not indicate sarcoidosis. Dr. Thompson found that Plaintiff's primary problem was asthma and recommended continuing Plaintiff's current medications. *Id*. Dr. Berhane did not believe that Plaintiff's asthma was caused by unsanitary conditions in his cell and no medical recommendation regarding Plaintiff's cell assignment was made. *Id*.

**Standard of Review**

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the

motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

**A.    Respondeat Superior**

Plaintiff's allegations against Correctional Medical Services, Inc. (CMS), the private prison health care provider, the Maryland Division of Corrections, Commissioner of Corrections J. Michael Stouffer, and Warden Kathleen Green are based solely upon the doctrine of *respondeat superior*. The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not

7

apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983). *Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D.Md., October 22, 1992) (respondeat superior does not apply to § 1983 claim, even where defendant is private corporation); *citing Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991). Accordingly, Plaintiff's claims against Defendants Correctional Medical Services, Maryland Division of Corrections, J. Michael Stouffer, and Kathleen Green shall be dismissed.

**B.     Medical Care**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). To state an Eighth Amendment claim for denial of medical care, Plaintiff must demonstrate that the actions of Defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844.  If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F. 3d 383 (4th Cir. 2001), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

The uncontroverted record reveals that Plaintiff was evaluated on a number of occasions concerning his complaints. Plaintiff's medications were evaluated and changed in an effort to determine if the medications for his hypertension were causing the prolonged coughing. Additionally, medical providers ordered medication, blood tests, x-rays, outside evaluations, and CT scans in order to properly diagnose and treat Plaintiff. Ultimately, he was diagnosed with asthma and the pulmonologist found that the medications prescribed by Dr. Berhane were sufficient to treat the condition. No further medical intervention was required. Neither Dr. Berhane nor Dr. Thompson found that Plaintiff's asthma was caused by mold or fungus in his cell. In light of the foregoing, the court finds that Plaintiff simply disagrees with the medical judgment of his health care

9

providers. Such disagreement with a course of treatment does not provide the framework for a federal civil rights complaint but rather, at most, states a claim of negligence.[2] *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975). The court simply cannot find from the uncontroverted medical records before it that the medical care received by Plaintiff was so egregious as to constitute an Eighth Amendment violation. Plaintiff's bald allegations that his asthma and the papilloma on his nose were caused by any mold in his cell is simply unsupported by the medical records.

**C. Conditions of Confinement**

Plaintiff complains that the ventilation system in his cell contained mold and fungus. Paper No. 1. Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). Thus, in an Eighth Amendment claim based on prison conditions, a prisoner must prove that prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297(1991) (quotations omitted). Specifically, prison officials have to consciously disregard a substantial risk of serious harm to an inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Helling v.*

[2] To the extent that the complaint could be construed as raising state law claims, the court would decline to exercise supplemental jurisdiction. *See* 28 U.S.C. §1367(c)(3); *United Mine Workers v. Gibbs,* 383 U. S. 715, 726 (1966).

*McKinney*, 509 U.S. 25, 32 (1993). Moreover, "on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.).

Plaintiff has been challenged to come forward with evidence, *i.e.* records and/or declarations, to prove both components of the Eighth Amendment standard. The medical records do not demonstrate that Plaintiff suffered any injury as a result of mold or fungus in his cell. Specifically, Dr. Berhane avers that Plaintiff "had no subjective signs or symptoms of any illness that could be caused by exposure to mold or fungus." Paper No. 19. Plaintiff's bald allegations are insufficient to overcome Dr. Berhane's affidavit and supporting medical records. Plaintiff has not provided any facts suggesting that Defendants acted with "deliberate indifference" to his health and safety. Accordingly, Defendants are entitled to summary judgment.

**Conclusion**

Defendants' Motions for Summary Judgment are granted, and Plaintiff's Motion for Summary Judgment is denied. Judgment shall be entered in favor of Defendants and against Plaintiff. A separate order follows.

Date: <u>January 15, 2010</u>　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　　　　DEBORAH K. CHASANOW
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge